# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-4788-16T1
                 A-4789-16T1

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

     Plaintiff-Respondent,

v.

S.C.B. and R.A.B., Sr.,

     Defendants-Appellants.

_____

IN THE MATTER OF THE GUARDIANSHIP
OF C.Z.K.B., a Minor.

_____

Submitted October 1, 2018 – Decided October 10, 2018

Before Judges Sabatino, Haas and Mitterhoff.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0133-17.

Joseph E. Krakora, Public Defender, attorney for appellant S.C.B. (Mark E. Kleiman, Designated Counsel, on the briefs).

Joseph E. Krakora, Public Defender, attorney for appellant R.A.B., Sr. (Richard A. Foster, Assistant Deputy Public Defender, of counsel and on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Diane L. Scott, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Cory H. Cassar, Designated Counsel, on the brief).

PER CURIAM

In these consolidated guardianship appeals, the biological mother S.C.B. (A-4788-16) and the biological father R.A.B. (A-4789-16) appeal the Family Part's termination of their parental rights as to their daughter C.Z.K.B., who is currently two years old.[1] The parents have been involved with the Division of Child Protection and Permanency ("Division") before, with their rights to their two older children (L.B. and R.A.B., Jr.) having been previously terminated. Those terminations were upheld by this court on appeal in an unpublished opinion. See Div. of Child Prot. and Permanency v. R.A.B. and S.C.P., Nos. A-3838-15 and A-4496-15 (App. Div. June 2, 2017).

---

[1] We use initials to protect the parties' privacy. R. 1:38-3(d)(12).

The Division removed C.Z.K.B. when the child was released from the hospital after birth in June 2016. The father is a convicted registered sex offender, arising out of his sexual assault of his eight-year-old cousin. The father is on Community Supervision for Life and he has not been permitted to have custody of a minor child without court approval. The mother is cognitively disabled.

As of the time of this trial, the Division planned to have C.Z.K.B. placed with the same resource family that has been taking care of her older brother, R.A.B., Jr. The older sister is in a different resource home. The three siblings have been having monthly visits with one another. The parents' relatives have been ruled out as feasible caretakers.

After a guardianship complaint was filed, Dr. Zachary Yeoman conducted a psychological evaluation on both parents and a bonding evaluation between the mother and the child. Dr. Yeoman also performed a psychosexual evaluation of the father. Dr. James Reynolds evaluated the father as well.

The mother was granted visitation while the litigation was pending, but the father was not. The father requested a best interests hearing, which was held before Presiding Judge David B. Katz in May 2017. Dr. Reynolds testified for the father at that hearing and Dr. Yeoman testified for the Division. Dr.

Reynolds opined that there is no indication the father would present a risk of sexual harm to his daughter, stating that his interview, testing scores, and behavior while on parole have not shown such a risk. Dr. Yeoman countered that the father does present such a risk, albeit a low one. The expert pointed to such things as the father's diagnoses of bipolar disorder and schizophrenia, his suicidal thoughts, his need for mental health counseling, and his lack of full candor in his interview session. The trial court denied the father's pretrial request for visitation, finding that it would not be in the best interests of the child.

During the ensuing guardianship trial, Dr. Alison Strasser Winston (who had testified in the prior case regarding the parents' two older children), caseworker Latoya Jones, and Dr. Yeoman testified. Dr. Reynolds and Dr. Yeoman's testimony at the pretrial best interests hearing was incorporated into the trial record, with the consent of counsel.

Dr. Winston opined that the mother continues to have cognitive limitations that impede her ability to care for a child. According to Dr. Winston, the mother lacks insight into her parental incapacity and does not understand why her children have been taken away from her. Dr. Winston did not believe the mother's limitations could be addressed successfully with additional

A-4788-16T1

services, and opined that the mother has not benefited from the parenting classes she attended.

Dr. Winston agreed with Dr. Yeoman that the father is not fit to care for the child. She noted the father's continued denial of his past sex offense, his lack of appreciation of his children's needs, and his contradictory statements about whether his time with C.Z.K.B. would need to be supervised.

In his amplified testimony at trial, Dr. Yeoman continued to opine that the father is not suitable to care for the child, principally because he has unaddressed mental health and substance abuse issues. As to the mother, Dr. Yeoman opined that her ongoing cognitive limitations render her unsuitable to raise the child and that she cannot provide the child with a stable and safe environment. He added that the bonding evaluation showed the mother is not the child's primary attachment nor a central figure in her life.

The defense did not call Dr. Reynolds at trial, but relied with consent on a transcript of his prior testimony and his written report. Dr. Reynolds did not evaluate the mother and his expert opinions are thus confined to the father.

In a thorough oral decision issued on June 23, 2017, Judge Katz concluded the Division had proven all four statutory factors under N.J.S.A. 30:4C:15.1(a), and ordered both parents' rights terminated. The judge found the testimony of

the Division's experts, Drs. Winston and Yeoman, to be credible, as well as that of the caseworker. The judge found the defense expert, Dr. Reynolds, was credible only as to the father's propensity to reoffend but not as to anything else, noting in particular that Dr. Reynolds did not analyze how visitation would be in the child's best interests.

On appeal, the father challenges the trial court's decision on only the first and second prongs of the statute and also raises some evidentiary issues. The mother challenges the court's findings on all four prongs. The Law Guardian joins with the Division in advocating that we affirm the court's decision.

The scope of review on appeals from orders terminating parental rights is limited. In such cases, the trial court's findings generally should be upheld so long as they are supported by "adequate, substantial, and credible evidence." N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014). A decision in this context should only be reversed or altered on appeal if the trial court's findings were "so wholly unsupportable as to result in a denial of justice." N.J. Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 511 (2004). This court must give substantial deference to the trial judge's opportunity to have observed the witnesses first hand and to evaluate their credibility. R.G., 217 N.J. at 552. This court also must recognize the considerable expertise of the Family Part,

which repeatedly adjudicates cases brought by the Division under Title 9 and Title 30 involving the alleged abuse or neglect of children. See, e.g., N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012); N.J. Div. of Youth & Family Servs. v. L.J.D., 428 N.J. Super. 451, 476 (App. Div. 2012).

On the whole, we must adhere to the deference we owe to the Family Part judge who presided not only over the guardianship trial but also the pretrial best interests hearing. The judge articulated a reasonable basis for finding the Division's two expert witnesses more credible in their evaluations than the defense expert. See Angel v. Rand Express Lines, Inc., 66 N.J. Super. 77, 85-86 (App. Div. 1961) (recognizing a trial court acting as fact-finder is free to accept or reject the testimony of any party's expert, in full or in part).

The father argues that he made more of an effort to have contact with his daughter here than the father in In re Guardianship of D.M.H, 161 N.J. 365 (1999). That may be so, but, as Judge Katz noted, the father in the present case still delayed for five months in requesting a best interest hearing.

We reject the father's argument that the trial court violated Rule 5:12-1(f) by adopting prior findings from the best interests hearing. Defendants consented to that prior evidence being considered, so any alleged error was invited. N.J. Div. of Youth & Family Servs. v. M.C., III, 201 N.J. 328, 340-42 (2010). The

father was given a fair opportunity at the guardianship trial to cross-examine the Division experts (which he did) and put on opposing live testimony (which he did not do).

We also reject the father's claims of lack of due process and fair notice of the Division's claims. Trial counsel did not object on hearsay grounds to certain facts and data from other sources considered by Dr. Yeoman under N.J.R.E. 703. We are unpersuaded by his argument that Dr. Yeoman provided inadmissible "net opinions," an argument that was not raised below with a timely objection, and we discern no plain error.

The mother's contentions of trial error also are not persuasive. The analysis upheld in the prior appeal with respect to the mother still pertains to her. Judge Katz reasonably found she has not progressed to the point of being a capable independent caretaker. The Division's experts both found that it would not cause more harm than good to terminate defendants' parental rights.

The mother criticizes Dr. Winston for not doing a bonding evaluation of her with C.Z.K.B., as opposed to her two older children. That omission was compensated for by the testimony of Dr. Yeoman, who did evaluate the mother's interactions with C.Z.K.B. and opined that termination was in the child's best interests.

A-4788-16T1

Although this two-year-old child is young, and she has a new caregiver who was not the subject of a bonding evaluation, there is nonetheless substantial evidence to support the trial court's decision.

We affirm, essentially for the sound reasons articulated by Judge Katz in his detailed oral opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4788-16T1